UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JEFFREY M. JOHNS,

                                          MEMORANDUM AND ORDER

            Plaintiff,                       CV 06-6156

     -against-                              (Wexler, J.)

KEVIN M. RAMPE, ANITA CONTINI,
IRENE CHANG, JOHN DOE and JANE
DOE

            Defendants.
----------------------------------------------------------X

APPEARANCES:

    MOLANDER & ASSOCIATES
    BY: GARTH MOLANDER, ESQ.
    4875 Sunrise Highway, Suite 300
    Bohemia, New York 11716
    Attorneys for Plaintiff

    ANDREW M. CUOMO, NEW YORK STATE ATTORNEY GENERAL
    BY: ANNE C. LEAHEY, ESQ., Assistant Attorney Genera;
    Attorneys for Defendants
    300 Motor Parkway, Suite 205
    Hauppauge, New York 11788

WEXLER, District Judge

       This is a civil rights action commenced by Jeffrey Johns ("Johns" or "Plaintiff") alleging a violation of his rights pursuant to the Fourteenth Amendment to the United States Constitution. Plaintiff's claims arise from the allegation that the Lower Manhattan Development Corporation ("LMDC") failed to properly consider Johns's submission in connection with a contest held to design a memorial at the World Trade Center Site. Named as defendants are LMDC representative Kevin M. Rampe ("Rampe"), Anita Contini ("Contini") and Irene Chang

("Chang") (collectively "Defendants"). Presently before the court is Defendants' motion to dismiss.

## BACKGROUND

### I. The Parties and the Design Competition

The facts recited below are gleaned from the complaint and taken as true at this point in the proceedings. Facts are also drawn from state court judicial records presently before the court. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (in context of motion to dismiss court may consider matters of which judicial notice may be taken as well as documents in plaintiff's possession which are relied upon in bringing suit).

Plaintiff Jeffrey Johns is a resident of this district. He was part of the Transit Authority emergency response team that worked at the World Trade Center site after the September 11, 2001 attack. Defendants Rampe, Contini and Chang are residents of New York State who have worked in various capacities with LMDC. LMDC is an entity created after September 11, 2001, to oversee and coordinate the rebuilding of Lower Manhattan, including the World Trade Center site. As such, LMDC, along with the Port Authority of New York and New Jersey, decides matters relating to the construction of a memorial at that site. Rampe is the LMDC Chairman of the Board, Contini is the Senior Vice President of the LMDC and Chang is a LMDC staff member.

Along with over 5,000 other applicants, Johns entered a competition, sponsored by the LMDC, to design a memorial to be constructed at the World Trade Center site (the "Memorial Competition"). The Memorial Competition was open to the public and entries, ranging from those submitted by school children, to those submitted by professional architects and landscape

2

designers, were received from all over the world.

On November 19, 2004, LMDC eliminated the vast majority of the contestants in the Memorial Competition, including Rampe, by naming eight finalists to proceed to stage two of the competition. Individual notices advising each of the 5,000 contestants of the selection of the finalists were not sent. Instead, notification of this decision was made by announcement of the finalists in the public media and on the LMDC web site. On January 6, 2004, LMDC made its selection of the winner of the Memorial Competition from among the eight finalists.

II. The State Court Proceedings

On May 7, 2004, Johns commenced a proceeding, pursuant to Article 78 of the New York Civil Practice Law and Rules, to set aside the decision of the LMDC. Johns argued before the Article 78 court that the LMDC did not observe its own guidelines in deciding the Memorial Competition. In response, LMDC argued, inter alia, that the Article 78 proceeding was time barred because the November 19, 2003, public announcement of the eight finalists triggered the running of the four month statute of limitations.

In an opinion dated August 4, 2004, the New York State Supreme Court agreed with the position of the LMDC, holding that Johns' proceeding was time barred. Specifically, it was held that the four month statute of limitations began to run when there was a "final and binding determination" as to Johns. That time period was held to have begun on November 19, 2003, when the LMDC announced the eight finalists. Because Johns knew at that time that he was no longer in the running, there was a final determination as to his submission. In view of the fact that the commencement of the Article 78 proceeding on May 7, 2004, was more than four months after the November 19, 2003 notification, the proceeding was dismissed as time-barred.

Johns appealed to the Appellate Division of the Supreme Court. In a decision dated November 22, 2005, that court noted that the Article 78 statute of limitations begins to run when the aggrieved party is "able to understand" the "consequences" and "impact" of the decision. In re Johns v. Rampe, No. 106901/04 (1st Dep't. 2005), citing New York State Ass'n. of Counties v. Axelrod, 78 N.Y.2d 158, 165-66 (1991). That date was held to have occurred on November 19, 2003 – the date when the public was informed of the identity of the eight finalists. The Appellate Division rejected the notion that Johns was entitled to individual written notice of the decision. Instead, the court held that "[u]nder the circumstances, i.e., a worldwide competition with over 5000 entrants, the November 19, 2003 publication of the eight finalists on the LMDC's web site and in news media, including the New York Times, Wall Street Journal, Associated Press, Reuters and television broadcast and cable network channels, sufficed as to notification."

Johns thereafter moved to reargue or, in the alternative, sought leave to appeal to the New York State Court of Appeals. On February 2, 2006, the Appellate Division denied the motion. This lawsuit followed.

III. The Present Complaint

In this civil rights action Plaintiff claims a deprivation of his Constitutionally protected rights to Due Process and Equal Protection. The factual background pled in this matter is identical to the claims made before the state court. In count one of his complaint, Plaintiff alleges denial of his procedural Due Process right to have the merits of his Article 78 petition heard in New York State Court. In support of this claim, Plaintiff alleges that Defendants failed to properly inform Plaintiff that he was not one of the eight finalists selected out of the field of 5,000 entrants. Count two of Plaintiff's complaint alleges a violation of his Constitutionally

4

protected right to Equal Protection. This count alleges that there was no "statewide standard" for notification to Memorial Competition participants. Defendants are alleged to have "relied upon methods of notification that would have varying effectiveness depending on individual circumstances." This is alleged to have resulted in the failure to apply notification methods to all participants "equally," which resulted in a Constitutional violation. Count Three of the complaint reiterates a Fourteenth Amendment Due Process claim and also states that Defendants violated Plaintiff's rights under the Privileges and Immunities Clause, and the First Amendment to petition the government. In support of this cause of action Plaintiff argues that the government has impeded Plaintiff's right to pursue a non-frivolous claim.

Plaintiff's request for relief is for this court to "allow the merits of Plaintiff's Article 78 petition to be heard in the supreme court of New York State." In a request for relief referred as by Plaintiff as an "ancillary remedy," Plaintiff seeks to have the results of the first stage of the Memorial Competition annulled or, in the alternative, an order enjoining construction of the World Trade Center Site Memorial until Plaintiff is able to have the merits of his Article 78 Petition decided in the New York State Court. Plaintiff does not seek to have this court determine the validity of the LMDC decision, he seeks only to have his Article 78 proceeding declared timely so that ha can have the opportunity to have the merits of his claim determined by the state court.

IV. The Motion to Dismiss

Defendants move to dismiss the complaint on several grounds. Specifically, dismissal is sought on the grounds of:(1) the Rooker-Feldman doctrine, see Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); (2)

5

collateral estoppel; (3) failure to state a Due Process or Equal Protection claim on the merits and (4) the absence of a justiciable controversy. After outlining relevant legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I. Standards For Granting A Motion To Dismiss

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974.

The "plausibility" language used by the Supreme Court in Bell Atlantic, has not been interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir.2007) (emphasis in original). Further, courts have noted that while heightened factual pleading is not the new order of the day, Bell Atlantic holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, Bell Atlantic Corp., 127 S. Ct. at 1959.

In the context of a motion to dismiss, this court must, as always, assume that all

6

allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. Watts v. Services for the Underserved, 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing the lawsuit. See Brass v. Amer. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Watts, 2007 WL 1651852 *2. With these principles in mind, the court turns to the merits of Defendants' motions.

II.   Rooker-Feldman

In light of the fact that application of the Rooker-Feldman doctrine deprives a district court of subject matter jurisdiction, it is appropriate to decide this issue as a threshold matter. In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 125 S. Ct. 1517 (2005), the Supreme Court discussed the Rooker-Feldman doctrine and noted that lower federal courts had sometimes interpreted the doctrine far beyond the intent of the original cases. Such interpretation was held to have resulted in "overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superceding the ordinary application of preclusion law pursuant to 28 U.S.C. §1738." Exxon, 125 S. Ct. at 1521. The Court specifically rejected the Second Circuit's interpretation of the Rooker-Feldman doctrine and held that it was to be limited to those cases commenced by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments." Id. at 1521-22 (rejecting broad interpretation of Rooker-Feldman as set forth by Second Circuit in Moccio v. New York State Office of Court Admin., 95 F.3d 195 (2d Cir. 1996)).

Guided by Exxon, the Second Circuit has set forth a four part test to be applied when determining whether Rooker-Feldman deprives a federal district court of subject matter jurisdiction. See Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). Hoblock holds that Rooker-Feldman applies only if four conditions are met:

- the federal-court plaintiff must have lost in state court;
- the plaintiff must complain of injuries caused by a state-court judgment;
- the plaintiff must invite district court review and rejection of that judgment, and
- the state-court judgment must have been rendered before the district court proceedings commenced (explaining that Rooker-Feldman has no application to federal-court suits proceeding in parallel with ongoing state court litigation).

Hoblock, 422 F.3d at 85 (citations omitted).

When Rooker-Feldman is analyzed along these lines, it becomes clear that the doctrine bars this lawsuit. First, Plaintiff was a "state-court loser." Second, the injury complained of, i.e., the failure of the state court to hear the merits of Plaintiff's challenge to the decision of the LMDC, is the injury caused by the state court statute of limitations decision. Third, Plaintiff clearly invites this court to review and reject the state court judgment. The complaint states specifically that Plaintiff seeks to have this court enter an order requiring the state court to hear the merits of Plaintiff's claim. Such an order would necessarily require this court to rule that the state court was wrong in deciding that Plaintiff's Article 78 proceeding was time-barred. Thus,

Plaintiff would have this court revisit and reject the state court finding that the statute of limitations began to run on November 19, 2003 and that the notice provided was adequate. Finally, as to the fourth Rooker-Feldman requirement, the state-court judgment was rendered months before commencement of these district court proceedings.

For the foregoing reasons, the court holds that the Rooker-Feldman doctrine deprives this court of jurisdiction to hear Plaintiff's claim. This court is without jurisdiction to rule, as Plaintiff requests, that his Article 78 proceeding was timely and that the State Court is therefore obligated to reverse its dismissal and hear the merits of Plaintiff's claims.

## CONCLUSION

Defendants' motion to dismiss Plaintiff's complaint is granted. The Clerk of the Court is directed to terminate the motion to dismiss and to close the file in this case.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
November 20, 2007